UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____
In the Matter of Z.R.S.L.                )
                                         )
SADYA YAKOV YEHUDAH LIBEROW,  )
                                         )
            Petitioner,                   )
                                         )
vs.                                       )   No. 23-cv-3200 (DLI)
                                         )
CHAYA MUSHKA ALTHAUS             )
                                         )
            Respondent.                   )
_____)

**PETITIONER'S MOTION FOR ISSUANCE OF SHOW CAUSE ORDER, INCLUDING TERMPORARY RESTRAINING ORDER AND PRELMINIARY INJUNCTION**

**The Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980; International Child Abduction Remedies Act, 22 U.S.C. 9001 *et seq*.**

Petitioner, Sadya Yakov Yehudah Liberow ("Mr. Liberow" or "Petitioner"), respectfully submits this Motion for an order restricting Respondent, Chaya Mushka Althaus ("Ms. Althaus" or "Respondent"), from removing Z.R.S.L. (the "Child") from this Court's jurisdiction pending determination of the Verified Petition for the Return of the Children to Petitioner ("Petition" or "Verified Petition").[1]

Petitioner seeks relief from this Court, in the form of an order for the return of the Child to Petitioner under the Convention on the Civil Aspects of International Child Abduction (the "Hague Convention" or the "Convention"). Oct. 25, 1980, T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98

---

[1]  Petitioner relies upon the facts he has verified in his Petition for the Return of the Children to Petitioner pursuant to the Hague Convention filed under The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 (the "Hague Convention" or the "Convention") and the International Child Abduction Remedies Act ("ICARA"). *See* T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98, *reprinted* in 51 Fed. Reg. 10493 (1986), text available at: https://www.hcch.net/en/instruments/conventions/specialised-sections/child-abduction (last accessed March 31, 2022); 22 U.S.C. § 9001 *et seq*. (2016). ECF No. 1.

1

(a copy of the Hague Convention is attached as Exhibit A to the Verified Petition; ECF No. 1-1). The objects of the Convention are as follows: (1) to secure the immediate return of children wrongfully removed or wrongfully retained in any Contracting State; and (2) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States. Convention, art 1. Specifically, the Petition seeks an order for the return of the Children, under Articles 8 (providing a right of action to a person exercising rights of custody) and 12 (providing for the return of the child as a remedy) of the Hague Convention, as well as under the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9001-9010 (a copy of ICARA is attached as Exhibit B to the Verified Petition; ECF No. 1-2).

The Convention on the Civil Aspects of International Child Abduction (the "Convention" or the "Hague Convention") came into effect in the United States of America on July 1, 1988 and came into force and effect between the United States of America and Australia on July 1, 1988. Essentially, it is an international treaty designed to prevent abduction or wrongful retention from a parent absconding with a child and running to another jurisdiction to litigate custody. Indeed, the Federal implementation of this accord, in Section 9001(a)(2) of the International Child Abduction Remedies Act, 22 U.S.C. §§ 9001-9010 (1989), includes the expressed Congressional finding that "[p]ersons should not be permitted to obtain custody of children by virtue of their wrongful removal or retention."

I.  **BACKGROUND**

The facts are fully laid out in the Verified Petition but are recited here succinctly for context.

The parties were married on August 25, 2015 in Australia. The parties share one (1) Child of the marriage: Z.R.S.L, born in 2016 in Australia. The parties and the Child are Australian citizens and always resided in Australia as a family.

On or around June 2020, the parties separated. On or about July 31, 2020, the Australian Family Court issued Orders on consent of the parties granting the parties shared parental responsibility for Z.R.S.L

Pursuant to the Australian court orders, the Child lived with Respondent and visited Petitioner two (2) nights per week and an additional weekly dinner visit. In November 2021 and March 2022, Respondent traveled out of Australia and asked Petitioner to care for the Child for extended periods of time, which he did.

Petitioner had visits with the Child on April 29 and April 30, 2022 when Respondent picked up the Child. On or around May 2, 2022, Respondent called Petitioner and told him they were in the U.S. and that it had been a last-minute trip. Petitioner discovered that Respondent has informed the Child's school that she would be returning in eight (8) weeks' time. Respondent also told Petitioner that she would be returning to Australia in June 2022.

On or around May 13, 2022, Respondent informed Petitioner that she had enrolled the Child in school in the U.S. Petitioner traveled to New York City in late May 2022 and visited with the Child though with difficulties from Respondent. Respondent and the Child were residing in Brooklyn, NY where the visits took place.

After Petitioner returned to Australia in June 2022, he learned through Respondent's Australian counsel that she did not plan to return to Australia.

Petitioner has never consented to the Child living in the United States. The Child's life was in Australia before Respondent abducted the Child. The Child attended kindergarten and

3

primary school in Australia before the wrongful removal and retention. The Child and the parties all have extended family in Australia.

The Hague Convention was drafted for this precise circumstance – "[t]o address the problem of international child abduction during domestic disputes." *Monasky v. Taglieri*, 140 S.Ct. 719, 723 (2020).

## II. PETITIONER'S PRIMA FACIE CASE

The general framework to establish a case for return under ICARA is to prove by the preponderance of the evidence, that a child has been wrongfully retained within the meaning of the Hague Convention. 22 U.S.C. § 9003(e)(1)(A). Under the Hague Convention, a removal or retention is considered "wrongful" where:

(a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

(b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for removal or retention.

Hague Convention, art. 3.

The fundamental inquiry in any case under the Hague Convention is the habitual residence of the child. The habitual residence in turn dictates the local law to be applied in determining the question of custody rights in the habitual residence. The Child's habitual residence at the date of removal, within the meaning of the Hague Convention, was Australia. The habitual residence is determined at the point in time "immediately before the removal or retention." Convention, art. 3. To determine the children's habitual residence, courts are to look at the totality of the circumstances specific to each case. *Id.* at 723. The Supreme Court noted that the habitual residence inquiry is fundamentally one of "[c]ommon sense." *Id.* at 727.

4

In the present case, the Child was raised in Australia and has Australian citizenship. Additionally, the parties have already litigated custody and other issues in Australia, where Australia was established as the residence of the Child. Australia was clearly the Child's habitual residence at the time of the wrongful removal and retention and remains as such, despite Respondent's unilateral decision to wrongfully remove and retain the Child in the United States without Petitioner's consent.

The second part of the prima facie analysis is determining whether the Children's removal or retention in another country is wrongful by the law of the country where the child is from, not where he has been abducted to. Specifically, the Hague Convention provides that the retention is wrongful where "it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention." Hague Convention, art. 3(a). The purpose of this provision is to make sure that the law of the child's habitual residence follows the child, so the abducting parent does not profit by his or her wrongful act and otherwise restores the status quo before the wrongful retention occurred.

Simply put, the left-behind parent must merely have rights relating to the care of the child or the right to determine where the child lives, and they do not need to be exclusive to him. In this case, Petitioner had rights of custody pursuant to court order and Australian law. See ECF No. 1 at ¶ 33-34.

Finally, Petitioner must demonstrate that he was exercising his rights of custody (referred to as "parental authority" in this case) or would have been if not for the wrongful removal or retention. Petitioner has always maintained a close relationship with the Child from her birth. Beyond regular visitation, Petitioner had greater access due to Respondent's travels out of the

country and last had a visit with the Child immediately prior to the wrongful removal and retention. Therefore, Petitioner was clearly exercising his rights of parental authority and would have continued to do so if not for Respondent's actions in abducting the Child to the United States. "In the context of custody, the term 'exercise' is liberally construed and will be found 'whenever a parent with de jure custody rights keeps, or seeks to keep, any sort of regular contact with his or her child.'" *Bader v. Kramer*, 484 F.3d 666, 671 (4th Cir. 2007) (quoting *Friedrich v. Friedrich*, 78 F.3d 1060, 1065 (6th Cir. 1996) ("Friedrich II")).

    a. **Mandatory Return**

The Petitioner in a Hague Convention case has the burden of proving wrongful removal under the terms of the Convention by a preponderance of the evidence. 22 U.S.C. § 9003(e)(A). Once this has been determined, if the return proceedings are commenced within one (1) year of the wrongful removal or retention, the return obligation is **absolute**:

> Where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial and administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned **shall order the return of the child forthwith**.

Hague Convention, art. 12 (emphasis added).

The return of the Children is not an adjudication of the underlying custody issues. It is simply sending the Children back to Petitioner before the Respondent resorted to self-help.

    b. **Exceptions to Mandatory Return**

A party who opposes the return of the child has the burden of establishing one or more of exceptions, two of which must be shown by a high burden of proof: clear and convincing evidence.

In the primary source of interpretation for the Convention, the Explanatory Report, Professor E. Pérez-Vera noted that any exceptions to the return of the child to her habitual residence:

> . . . are to be interpreted in a restrictive fashion if the Convention is not to become a dead letter. In fact, the Convention as a whole rests upon the unanimous rejection of this phenomenon of illegal child removals and upon the conviction that the best way to combat them at an international level is to refuse to grant them legal recognition. The practical application of this principle requires that the signatory States be convinced that they belong, despite their differences, to the same legal community within which the authorities of each State acknowledge that the authorities of one of them—those of the child's habitual residence are in principle best placed to decide upon questions of custody and access. As a result, a systematic invocation of the said exceptions, substituting the forum chosen by the abductor for that of the child's residence, would lead to the collapse of the whole structure of the Convention by depriving it of the spirit of mutual confidence which is its inspiration.[2]

The first exception that requires clear and convincing evidence is found in Article 13(b) of the Convention. This exception requires that "there is a *grave risk* that his or her return would expose the child to physical or psychological harm or otherwise place the child in an *intolerable situation*." Convention, art. 13 (b) (emphasis added). Petitioner has always had unfettered access to the Child prior to the abduction and there is no grave risk of return to Petitioner. Indeed, the opposite is true, the longer she remains away from the Petitioner the greater the risk of harm.

The second exception that requires clear and convincing evidence is found in Article 20 of the Convention. This exception requires that return *may* be refused "if this would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms." This exception does not apply.

---

[2]   Elisa Pérez-Vera, Explanatory Report: Hague Conference on Private International Law in 3 Acts and Documents of the Fourteenth Session ("Explanatory Report") 34, at 22-23.

The third exception, contained in Article 12 of the Convention, is inapplicable: if the proceedings were commenced *more than one year* after the wrongful retention *and* the child has become settled in his new environment, the return is not mandatory. However, in this case, whether the Child has become settled (she has not) is irrelevant because this action was initiated by Petitioner less than one (1) year after the wrongful removal. In that situation, " . . . the authority concerned shall order the return of the child forthwith." Convention, art. 12, clause 1.

The fourth exception, contained in Article 13 of the Convention, permits the court to decline return if the child has reached sufficient age and maturity that their opinions should be considered by the Court. Hague Convention, art. 13. "There is a 'demonstrated disinclination" among courts to defer to a child's objection as a basis to deny a petition." *Trudrung v. Trudrung*, 686 F. Supp. 2d 570, 578 (M.D.N.C. 2010). Additionally, Courts have routinely found that young children, similar to the ages of the Child in this action, lack the sufficient age and maturity necessary to apply this exception. *See Matovski v. Matovski*, 2007 WL 2600862, at *15 (S.D.N.Y. August 31, 2007) (noting a five-year-old child does not "exhibit sufficient maturity to apply the Article 13 exception"); *see also Mendoza v. Silva*, 987 F. Supp. 2d 883, 905 (N.D. Iowa 2013) (holding a five-year-old is not of sufficient age and maturity for her objection to be taken into account). In fact, based on our research no court has considered this exception for a child younger than eight years old.

The last exception is also inapplicable. Specifically, Article 13(a) of the Convention places the burden on Respondent to establish that Petitioner either consented and/or acquiesced to the retention or that he had not actually been exercising custody rights at the time of retention. Obviously, Petitioner, by filing this litigation in this Court, refutes any claim that he consented to the present circumstances.

**III.     PETITIONER IS ENTITLED TO *EX PARTE* INJUNCTIVE RELIEF**

Under FRCP 65, the Federal Courts are empowered to grant temporary restraining orders and preliminary injunctions. *See* FED. R. CIV. P. 65. Consistent with Federal Rule 65 and the exigent circumstances that typically exist in Hague Convention cases, Article 2 of the Hague Convention provides: "Contracting States shall take all appropriate measures to secure within their territories the implementation of the objects of the Convention. For this purpose, they shall use the most expeditious procedures available." October 25, 1980, T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98. The "objects" of the Hague Convention are expressed in Article 1: the prompt return of an abducted child and the protection of the rights of custody. Federal Rule 65 allows this Court to expeditiously promote the Hague Convention's objectives by emergency equitable relief.

Rule 65(b) further provides that "(a] temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party 's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required." FED. R. CIV. P. 65.[3]

ICARA § 9004(a) allows for this Court to take "measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition." ICARA § 9004(b) limits this Court's

---

[3]     Notice here should not be required considering Respondent's history of absconding with the Child and concealment as to their present address. Any notice may result in the further abduction of the Child and possible further concealment.

9

authority to "order a child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied."

The decision to grant or deny an injunction is "within the sound discretion of the district court." *Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242, 1246 (11th Cir. 2002). "A preliminary injunction may be issued to protect the moving party from irreparable injury and to preserve the power of the trial court to render a meaningful decision on the merits." *Compact Van Equip. Co., Inc. v. Leggett & Platt, Inc.,* 566 F.2d 952, 954 (5th Cir. 1978). The Court's task on an application for a preliminary injunction is to find: "(1) a substantial likelihood that the movant will ultimately prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if it is issued, would not be adverse to the public interest." *Id.* As explained below, all of the elements for the emergency equitable relief requested herein, including injunctive relief, are satisfied in this case.

### a. There is Substantial Likelihood that Petitioner Will Ultimately Prevail on the Merits.

As stated in greater detail above in Section II, according to the Hague Convention, the removal or retention of children is wrongful where the removal is in breach of established custody rights defined by the law of the country in which the child was habitually resident immediately before the removal or retention, and where, at the time of removal, these custodial rights were exercised (either jointly or alone) or would have been so exercised but for the removal. Art. 3, October 25, 1908, T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98. By virtue of Australian law and court order, the country of the Child's habitual residence, Petitioner has custodial rights to the Child. Additionally, Petitioner exercised his custodial rights until the wrongful removal and

10

retention. Consequently, Petitioner is likely to prevail on the merits of his action for the return of the Child.

### b. Petitioner will suffer irreparable injury unless equitable relief is granted.

Given that Respondent has now wrongfully removed the Child to the United States and frustrated Petitioner's rights, there is obviously a risk that Respondent will further hide the Child and herself when she learns about this new filing. This is more worrisome considering Respondent's concealment of her current address as well as her ties to the religious Orthodox Jewish community and thus her ability to travel to Israel and evade this Court's jurisdiction.

This is precisely the situation envisaged by the District Court in *Morgan v. Morgan,* where construing the Hague Convention and similar provisions under Iowa state law, the district court issued *ex parte* relief because it feared that "if a temporary restraining order is not issued *ex parte*, Mrs. [Respondent] and Mr. [Respondent's boyfriend] will likely flee this jurisdiction with the child upon receiving notice of Mr. [Petitioner's] intent to seek a temporary restraining order preventing them from doing so." 289 F. Supp.2d 1067, 1070 (N.D. Iowa 2003).

If Respondent flees with Petitioner's Child again, there may be even greater difficulty locating them. Such a state of affairs would qualify as irreparable injury to the Petitioner on any common-sense approach: the separation of a parent from the parent's child is an irreparable injury that can only be rectified by reunion with the child.

The real threat of irreparable injury clearly exists. While it is possible that the Respondent will voluntarily attend a hearing before this district court, the Court must be mindful of the fact that, given that Respondent has already previously abducted the Child, there is a distinct possibility that Respondent will simply continue that trend. Petitioner would suffer irreparable injury if the requested relief is not granted. He continues to be separated from his child. Under these

circumstances, emergency equitable relief is authorized under the Hague Convention. ICARA directly speaks to such a remedy. 22 U.S.C. §9004(a) provides that a court may take appropriate measures "to protect the well-being of the child involved *or to prevent the child's further removal or concealment before the final disposition of the petition*." (Emphasis added).

### c. The threatened injury to Petitioner outweighs any damage an injunction may cause Respondent.

The potential of Petitioner once again losing the Child and/or being abducted by Respondent far outweighs any perceived injury to Respondent. Petitioner asks the Court to restore the status quo: the return of the Child and the ability of Petitioner to exercise his rights of custody without risk of immediate further abduction.

The Respondent is in no position to complain. Having abducted the Child and, through her unilateral, unauthorized conduct, taken them to the United States and kept them from their father, she left Petitioner with no choice but to pursue these remedies.

### d. An injunction, if issued, would not be adverse to the public interest.

Petitioner seeks relief expressly authorized under the Hague Convention, an international treaty ratified as between Australia, the United States, and other contracting states. The relief is further consistent with federal and state law implementing the Convention. There can be no public interest objection raised to the relief sought by Petitioner. The only relevant considerations are whether Petitioner satisfies the requirements of the Hague Convention and the requirements under the Federal Rules of Civil Procedure for the issuance of emergency equitable relief. Those requirements are both satisfied here.

### IV. CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons, Petitioner asks this Court to grant the following relief:

a.     Issue an immediate order prohibiting the removal of the Child from the jurisdiction of this Court, pending a hearing on the merits of the Verified Petition;

b.     Issue an immediate order that Respondent surrender any and all of her passports and all of the passports of the Children to the Clerk of this Court;

c.     Any such further relief as justice and its cause may require.

Respectfully Submitted:

By: *Richard Min*
Richard Min, Esq.
Green Kaminer Min & Rockmore LLP

*ATTORNEY FOR PETITIONER*